UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE DARONTE DAVIS, | No. 2:22-cv-0864-SCR-P |
| Plaintiff, | |
| v. | ORDER AND |
| MESKATH UDDIN, | FINDINGS AND RECOMMENDATIONS |
| Defendant. | |

Plaintiff is a state prisoner proceeding without counsel in this civil rights action filed pursuant to 42 U.S.C. § 1983. In the operative complaint, plaintiff alleges an Eighth Amendment physical and sexual assault claim against defendant Dr. Uddin based on a medical examination that occurred on March 9, 2020. Currently pending before the court is defendant's motion for summary judgment. ECF No. 31. The motion has been fully briefed by the parties. ECF Nos. 36, 43. For the reasons explained below, the undersigned recommends granting defendant's motion for summary judgment.

**I.      Summary Judgment Standards Under Rule 56**

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record…." Fed. R. Civ. P. 56(c)(1)(A). Summary

judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or shows that the materials cited by the movant do not establish the absence of a genuine dispute.[1]  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see In re Oracle Corp. Securities Litig., 627 F.3d 376, 387 (9th Cir. 2010).  In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

---

[1] On April 3, 2023, and October 25, 2023 (ECF Nos. 23, 31-1), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

1 committee's note on 1963 amendments).

2 In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of thin air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**II.    Plaintiff's Claims**

In his verified complaint, plaintiff states that he was scheduled to see Dr. Uddin regarding a groin injury, but also back pain on March 9, 2020.[2] ECF No. 1 at 3. Dr. Uddin asked plaintiff to pull up his shirt to check a disc. ECF No. 1 at 3. While Dr. Uddin was checking plaintiff's back, he began to punch plaintiff in the back. Id. Plaintiff told Dr. Uddin that hurt and asked why he was punching him. Id. Dr. Uddin stated, "I'm a doctor I know what I'm doing," and hit plaintiff four more times. Id. Plaintiff said, "Hey, knock it off, that shit hurts." Id. Dr. Uddin backed away. Id.

Dr. Uddin then told plaintiff to pull his pants down so he could check plaintiff for a hernia. ECF No. 1 at 3. Dr. Uddin walked to the door, looked both ways, and told plaintiff to lie down on the chair. Id. Dr. Uddin approached plaintiff, grabbed plaintiff's genitals with his left hand and pushed plaintiff's left thigh outward with his right hand. Id. Plaintiff said, "Hey, that's not my groin. That's my dick." Id. Dr. Uddin said, "It's all part of the same thing," and squeezed plaintiff's groin area. Id. Plaintiff sat up and said, "dude you're hurting me." Id. Dr.

---

[2] "A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000).

1  Uddin instructed plaintiff to sit up, stand, twist, and bend at the hip to touch his toes.  Id.
2  Thereafter, he told plaintiff, "Nothing is wrong I'm taking your [lower bunk/lower tier] chrono."
3  Id.

### III.    Defendant's Summary Judgment Motion

Defendant moves for summary judgment based on the lack of a triable issue of fact concerning plaintiff's claim that he was physically assaulted during defendant Dr. Uddin's examination of his lower back because defendant used only medically acceptable methods of evaluating his back pain.  ECF No. 31 at 17-19.  "There is no substantial evidence from which the Court could conclude that Defendant examined Plaintiff's lower-back pain 'maliciously and sadistically for the very purpose of causing harm,' as is required for an Eighth Amendment excessive force claim."  ECF No. 31 at 19.

Next, defendant contends that there is no genuine issue of material dispute on the sexual assault claim because plaintiff admits that any touching was not done for the purposes of defendant's sexual gratification.  ECF No. 31 at 19-24.  "Defendant denies that he touched Plaintiff's penis during the medical encounter, as he did not perform a medical examination of Plaintiff's genitals.  But, even if the Court were to credit Plaintiff's allegations, instead, they do not amount to a violation of the Eighth Amendment."  ECF No. 31 at 7.  To the extent that plaintiff testified at his deposition that defendant Dr. Uddin stated "I've seen bigger" at some point during the examination, this comment amounts to verbal sexual harassment that is not "unusually gross even for a prison setting" and does not violate the Eighth Amendment.[3]  ECF No. 31 at 23-24 (citing Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), as amended by 135 F.3d 1318 (9th Cir. 1998)).

Defendant also asserts that plaintiff's claim for emotional damages is barred by the Prison Litigation Reform Act.  ECF No. 31 at 24-26.  Finally, defendant submits that he is entitled to qualified immunity because his medical examination did not violate the Eighth Amendment and

---

[3] The court's screening order did not include any claim of sexual harassment and, as a result, it is not addressed herein.  See ECF No. 8.  The court understands any such statement by defendant as evidence of his intent, and not as factual support for a separate claim for relief.

1   because it was not clearly established that his conduct violated the Constitution. ECF No. 31 at
2   26-30. "No reasonable doctor would have understood that he is violating the Constitution when
3   checking a patient for pain, even if the examination itself incidentally causes some pain." ECF
4   No. 31 at 29.

5         In his opposition, plaintiff indicates that defendant is minimizing his touches as taps or
6   palpations, but they were punches with a closed fist. ECF No. 36 at 2. As evidence of
7   defendant's malicious intent, plaintiff points out that defendant punched him four more times in
8   the back after plaintiff complained that it was causing him pain. ECF No. 36 at 13. Plaintiff
9   contends that there is a genuine issue of material dispute in this case because "[p]erforming a
10  medical procedure without informed consent is a technical assault and battery." ECF No. 36 at 6.
11  Finally, plaintiff submits that his Eighth Amendment rights were violated because the defendant
12  violated CDCR rules, policies, and regulations.[4] ECF No. 36 at 18. Plaintiff submitted two
13  separate declarations signed under penalty of perjury as well as exhibits in support of his
14  opposition which have been considered by the court. ECF Nos. 38-40.

15        By way of reply, defendant asserts that the physical contact in this case was only
16  incidental to the scope of the medical examination for plaintiff's complaints of lower-back pain
17  and groin pain. ECF No. 43.[5] According to defendant, plaintiff's assertion that he did not
18  consent to any portion of the medical examination is contradicted by the allegations in the
19  complaint as well as plaintiff's own deposition testimony. ECF No. 43 at 3-4. "Although
20  Plaintiff claims he was sexually assaulted during the medical encounter, that does not equate to an
21  overall lack of consent for Defendant to perform any type of examination on Plaintiff." ECF No.
22  43 at 4. Even assuming that plaintiff's description of the medical examination is true for purposes
23  of the pending summary judgment motion, the touching by defendant does not amount to an
24  Eighth Amendment violation. ECF No. 43 at 6. Defendant submits that "[i]t cannot be said that,

---

[4] The remainder of plaintiff's opposition describes his bases for disputing particular facts and are more appropriately addressed in the Undisputed Material Facts section of these Findings and Recommendations.

[5] To the extent that defendant utilizes disparaging comments and name calling in the reply brief, he is admonished that this is not conducive to the fair administration of justice. See ECF No. 43 at 2.

for the purposes of a doctor examining a patient, this type of force is 'repugnant to the conscience of mankind.'" ECF No. 43 at 8 (citing Hudson v. McMillian, 503 U.S. 1, 10 (1992)).

Plaintiff also filed a sur-reply to defendant's summary judgment motion for which he requested leave of court to file in order to have a "fair shot." ECF Nos. 44-1 at 1; see ECF No. 44 (sur-reply). This prompted defendant to file a motion to strike the sur-reply. ECF No. 45. Although a sur-reply is disfavored, plaintiff did request leave of court to file the sur-reply. See Hill v. England, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005) (citation omitted). The court finds good cause to permit the filing of a sur-reply in this case to allow plaintiff to respond to defendant's assertion that his affidavits in opposition to summary judgment are just a sham and should be disregarded by the court. Accordingly, defendant's motion to strike the sur-reply is denied.

In his sur-reply, plaintiff largely takes issue with defendant's efforts to minimize and trivialize his case. ECF No. 44. Plaintiff emphasizes that defendant violated policy by not having additional staff present during plaintiff's groin examination and that this amounts to deliberate indifference of plaintiff's right to safety.[6] ECF No. 44 at 4-5, 10. The defendant's actions amount to a sexual assault because they induced "fear, shame, humiliation, and mental anguish" in plaintiff and because "the law does not state the length of time that is needed to commit sexual assault." ECF No. 44 at 5, 7.

### IV. Undisputed Material Facts[7]

At all times relevant to the allegations in the complaint, plaintiff was an incarcerated individual in the custody of the California Department of Corrections and Rehabilitation (CDCR). ECF No. 31-2 at 2 (Defendant's Separate Statement of Undisputed Facts at No. 1).[8] Defendant was employed as a Physician and Surgeon at California State Prison-Sacramento (CSP-SAC). DSSUF at No. 1. At that time, defendant had been a doctor for forty-three years. Id. Plaintiff is

---

[6] This case is not proceeding on an Eighth Amendment claim of deliberate indifference to plaintiff's serious medical needs or a violation of his right to safety. See ECF Nos. 8 (screening order), 11 (plaintiff's notice on how to proceed).
[7] All facts are undisputed unless otherwise indicated.
[8] Hereinafter referred to as DSSUF.

6

1  not a medical doctor and has never received any medical training. DSSUF at No. 3.

2  Plaintiff has a history of knee pain, back pain, and groin pain. DSSUF at No. 4. Plaintiff further indicates that his groin was originally injured in 2016, and was reaggravated in 2019. ECF No. 37 at 2 (Plaintiff's Response to Defendant's Undisputed Facts at No. 4). Plaintiff was diagnosed with severe degenerative joint disease of the lumbar spine and a bulging disc at L3-L4, mild degenerative joint disease for the remainder of his lumbar spine, and kidney issues. DSSUF at No. 5. At various times, including before he started seeing defendant Uddin, plaintiff had received a medical chrono for lower-bunk, soft shoes, and a weight restriction. DSSUF at No. 7.

According to defendant, plaintiff had a total of nine appointments with Dr. Uddin, and he was personally seen at six of those appointments. ECF No. 31-3 at 3 (Declaration of M. Uddin at ¶ 6). Plaintiff disputes this and testified at his deposition that March 9, 2020 was the first time that he met Dr. Uddin even though his medical records indicate that Dr. Uddin was assigned to be plaintiff's primary care physician in 2019. ECF No. 37 at 3 (citing Deposition at 33:5-34:25). Defendant indicates that all of these medical appointments were uneventful and completed without incident except for the March 9, 2020 appointment where plaintiff became angry at the end of the encounter. ECF No. 31-3 at 3-5 (Uddin Declaration). Again, plaintiff disputes that any appointments occurred prior to March 9, 2020, but does agree that "[e]verything past 3-9-2020, was uneventful [and] without incident. ECF No. 37 at 4 (Plaintiff's Response at ¶ 12).

All CDCR documentation of medical encounters follow the widely used Subjective-Objective-Assessment-Plan (SOAP) format, which includes plaintiff's subjective complaints of any symptoms as well as medical staff's objective findings related to the complaints. DSSUF at No. 14.

Prior to the medical appointment on March 9, 2020, plaintiff submitted several requests for health care services, referred to as CDCR 7362 forms, complaining of back and groin pain. DSSUF at No. 13.

**A. March 9, 2020 Medical Examination**

The medical encounter on March 9, 2020, began around 9:00 a.m. and lasted no more than twenty minutes. DSSUF at No. 17. Plaintiff's chief complaints were for lower-back pain and left

7

1  groin pain. DSSUF at No. 15. Defendant's plan was to evaluate these complaints and rule out a
2  possible hernia, which can be associated with pain in the inguinal area (i.e., the groin).

### B. Lower Back Examination

After defendant asked plaintiff to take a seat on the exam table, plaintiff complied and lifted up his shirt to allow his back to be examined. DSSUF at Nos. 18, 19. Defendant was aware that plaintiff suffered from chronic lower-back pain and chronic kidney disease. DSSUF at No. 20. As a result, defendant's examination focused on the costovertebral angle (CVA), which is the acute angle formed on either side of the back between the twelfth rib and the vertebral column. DSSUF at No. 20. To test for tenderness in this area, defendant started by applying gentle pressure with his finger to different parts of the region inside the CVA, including the L3-L4 area. DSSUF at No. 22. When this light pressure did not suggest tenderness, defendant Dr. Uddin placed one hand over the region inside the CVA, and tapped that hand with the closed fist of his other hand multiple times as he moved his hand in that region. DSSUF at No. 23. According to defendant, "[t]his is a commonly used and widely accepted method for checking CVA tenderness." ECF No. 31-3 at ¶. Plaintiff disputes this and indicates that defendant punched his back four times. Plaintiff's Deposition at 44:15-16, 52:21-53:4. There is no dispute that plaintiff responded by indicating that he felt pain. DSSUF at No. 24. Plaintiff rated his pain as a six on a scale of one to ten, when defendant was tapping his lower-back area. DSSUF at No. 26. Defendant concluded that portion of the exam and noted that plaintiff's back pain was "mild" in the medical progress notes. DSSUF at No. 25.

### C. Range of Motion Examination

After defendant finished examining plaintiff's back, he performed several tests of plaintiff's lower extremities to test for range of motion and neurological response to stimuli, and did the same to his shoulders. DSSUF at No. 29. Defendant described plaintiff's range of motion in his legs and shoulders as "fine and full." DSSUF at No. 30. Plaintiff disputes that this portion of the exam occurred because Dr. Uddin did not explain what he was doing and plaintiff did not understand it. ECF No. 37 at 8.

At the end of this portion of the exam, defendant asked plaintiff to lower his pants and

expose his left groin area. DSSUF at No. 31.

### D. Groin Examination

To preserve plaintiff's privacy during the next part of the physical examination, defendant went to his office door and confirmed that no passers-by were in the hallway. DSSUF at No. 32. Plaintiff disputes this and indicates that defendant Dr. Uddin violated CDCR policy by not having an additional staff person present during this portion of the examination because plaintiff's pants were down. ECF No. 37 at 9.

Defendant proceeded to perform a hernia examination on plaintiff which he determined was necessary based on a review of plaintiff's chart which showed a four year history of intermittent left groin pain. DSSUF at Nos. 33-34. Plaintiff disputes this by indicating that his groin injury had not been treated properly in the past. ECF No. 37. The hernia examination consisted of a visual inspection and palpation of plaintiff's groin to rule out any bulges or abnormal movements. ECF No. 31-3 at 7 (Defendant's Declaration at ¶ 14). As part of the hernia examination, defendant used a technique that involved lightly applying his fingers on the inside of plaintiff's left groin area and upper thigh. DSSUF at No. 36. In response, plaintiff indicated that there was some tenderness in this area. DSSUF at No. 37. As part of the medical progress notes, defendant described plaintiff's response as tenderness in the left groin, along the abductor magnus tendon. DSUF at No. 38.

Plaintiff acknowledged in his deposition that it was reasonable that defendant would check for possible hernia, since hernias could happen in the groin area. DSSUF at No. 39 (citing Plaintiff's Deposition at 63:1-5).

Defendant denies touching plaintiff's penis or performing any type of genital examination during the March 9, 2020 visit. ECF No. 31-3 at ¶ 14. Defendant asserts that if a genital examination was conducted, he would have requested an additional staff member to be present and documented that in plaintiff's medical record. DSSUF at No. 41. Defendant further states that any observation of plaintiff's genitals was only incidental to checking for the presence of a hernia in his groin area. DSSUF at No. 33. Defendant denies making any comment, sexual or otherwise, while touching plaintiff's penis. ECF No. 31-3 at ¶18 (Defendant's Declaration).

1  According to defendant, he did not touch plaintiff with the intent to harm him or for any type of
2  sexual gratification; rather, any touching was incidental to the physical examination that was
3  "limited in scope to evaluating his chief complaints of pain." ECF No. 31-3 at ¶ 18. Plaintiff
4  agrees that, sometimes, doctors are required to touch a patient's private area depending
5  on the patient's stated medical complaint. DSSUF at No. 47.

6  Plaintiff disputes that the touching was for the purpose of a hernia examination. ECF No.
7  37 at 9. Plaintiff adamantly disputes that defendant had consent to perform any hernia
8  examination and asserts that defendant violated CDCR's informed consent policy. ECF No. 37 at
9  10; ECF No. 40 at 121). Plaintiff indicated in his deposition that defendant touched his penis for
10 approximately six seconds by moving it to the side, and he did not stroke it or touch it in an up
11 and down motion. Plaintiff's Deposition at 72:5-73:13. According to plaintiff, defendant said
12 "I've seen bigger than that," which plaintiff thought at the time was referring to the bone in his
13 thigh. Plaintiff's Deposition at 70:23-71:9. Plaintiff believes the touching was sexual in nature
14 only because defendant touched a "sexual part" without warning plaintiff that he would do so and
15 giving plaintiff the opportunity to move the penis himself. Plaintiff's Deposition at 74:11-75:20;
16 116:1-19. Plaintiff admits he was angry during the encounter and "mentally hurt" because
17 defendant discontinued his lower-bunk medical chrono. DSSUF at No. 50. Plaintiff knew that he
18 could terminate the medical exam at any point. DSSUF at No. 54.

19 The remainder of the parties' pleadings dispute plaintiff's subsequent administrative
20 grievances, CDCR's Prison Rape Elimination Act ("PREA") investigation, and the California
21 Medical Board's response to plaintiff's complaint concerning defendant Dr. Uddin's medical
22 examination. The court finds it unnecessary to detail those disputes herein because they are not
23 necessary to resolve the pending motion for summary judgment. To the extent that plaintiff
24 objects to the sealing of the declaration provided by D. Anderson describing CDCR's PREA
25 investigation and moves to strike it from the record, the undersigned overrules plaintiff's
26 objection because the court has not relied upon the challenged declaration to resolve the pending
27
28

summary judgment motion.  See ECF No. 48 (sealing order).[9]

## V. Legal Standards

### A. Physical Assault

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is… whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 7 (1992).  The court's inquiry into an excessive force claim focuses on the extent of the prisoner's injury, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (1992) (quotation marks and citations omitted).  While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not end it.  Hudson, 503 U.S. at 7.  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency.  Whitley v. Albers, 475 U.S. 312, 327 (1986).  However, the Eighth Amendment does not prohibit "de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 10 (cleaned up).

### B. Sexual Assault

A sexual assault claim pursuant to the Eighth Amendment is established when a prisoner proves that a prison official, "acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct" for the prison official's "own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." Bearchild v. Cobban, 947 F.3d 1130, 1144 (9th Cir. 2020).  The Ninth Circuit has emphasized that:  (i) "sexual assault serves no valid penological purpose"; (ii) "where an inmate can prove that a prison guard committed a sexual assault, …the subjective component of the Eighth Amendment claim is satisfied"; and (iii) "an inmate need not prove that an injury resulted from [a] sexual assault ..."  because it "is objectively 'repugnant to the conscience of

---

[9] This order was entered by the magistrate judge previously assigned to this matter.

mankind' and therefore not de minimis for Eighth Amendment purposes." Id. (citation omitted). In other words, "[t]he current Eighth Amendment jurisprudence focuses on whether the alleged sexual harassment had a 'legitimate penological justification,' and was intended to sexually gratify the perpetrator or to 'humiliat[e], degrad[e], or demean[ ]' the inmate." Brewster v. Mills, 2022 WL 976973, at *3 (N.D. Cal. Mar. 31, 2022) (noting that "the law regarding sexual abuse and sexual harassment has changed over time") (citation omitted).

### VI. Analysis

The undersigned finds that defendant has met his initial burden of identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his two Eighth Amendment claims. See Matsushita Elec. Indus., 475 U.S. at 586 (1986). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Securities Litig., 627 F.3d at 387. Drawing all reasonable inferences in plaintiff's favor, plaintiff has not submitted sufficient evidence to create a genuine issue of material fact with respect to his claim that defendant committed a physical and sexual assault against him during the March 9, 2020 medical examination for the following reasons.

With respect to the physical assault claim, even in the light most favorable to plaintiff, there is no evidence that defendant applied any force in a malicious and sadistic manner so as to cause plaintiff harm during the medical examination. There is no dispute that defendant Dr. Uddin used a closed fist during plaintiff's back examination. However, Dr. Uddin explained that he used his closed fist on top of his other flat hand to touch plaintiff's back which is the medically accepted procedure for evaluating CVA back tenderness. Plaintiff has not come forward with any contrary evidence from a medical professional to dispute this.

Plaintiff has also not come forward with other circumstantial evidence that might indicate a malicious or sadistic mental state on the part of Dr. Uddin. See Mason v. Martinez, No. 2:14-cv-1041 MCE AC P, 2017 WL 1179405, at *9 (E.D. Cal. March 29, 2017) ("Plaintiff has presented no circumstantial evidence that would support an inference [the defendant] acted for the

purpose of causing him physical harm."). The only disputed fact that arguably supports plaintiff is plaintiff's testimony that Dr. Uddin "punched" him four times after he complained of pain. Specifically, plaintiff testified that (1) Dr. Uddin "punched" him four times, (2) plaintiff complained of pain, (3) Dr. Uddin then "did a circular motion on my disk," (4) plaintiff then complained that "you can't push that in," and (5) plaintiff then "punched" him another four times. ECF No. 40 at 155 (Dep. Tr. at 58). But plaintiff also testified that those punches were "not as hard as a fight" and that "[i]t wasn't like he was trying to fight me or nothing." Id. In the context of an undisputed record concerning the medical appropriateness of Dr. Uddin's use of his hands (including his knuckles) to evaluate plaintiff's back pain, those four post-complaint "punches" are insufficient to create a meaningful dispute about whether Dr. Uddin acted maliciously and sadistically. See, e.g., Lombardo v. City of St. Louis, 594 U.S. 464, 468 (2021) (referencing "the careful, context-specific analysis required by [the Supreme] Court's excessive force precedent").[10] As a result, there is no genuine issue of material dispute concerning plaintiff's Eighth Amendment physical assault claim. Defendant is entitled to summary judgment on this claim.

Turning to the sexual assault claim, viewed in the light most favorable to plaintiff, defendant's touching of plaintiff's penis occurred in the course of a medical examination to rule out the possibility of an inguinal hernia based on plaintiff's complaint of groin pain.[11] Plaintiff concedes that that it was reasonable that defendant would check for a possible hernia and he does not point to any evidence that defendant's touching was done for any ulterior purpose.[12]

---

[10] While Lombardo involved a Fourth Amendment excessive force claims, context-specific analysis is no less relevant in Eighth Amendment excessive force claims.

[11] To the extent that plaintiff bases his claim on the violation of CDCR policy and regulations including the Prison Rape Elimination Act, that is not sufficient to establish an Eighth Amendment violation. See Ybarra v. Bastian, 647 F.2d 891, 892 (9th Cir. 1981) (emphasizing that "Section 1983 protects against the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.' ... Violations of state law alone are insufficient [to state a Section 1983 claim]."); Porter v. Jennings, 2012 WL 1434986, at *1 (E.D. Cal. Apr. 25, 2012) (collecting cases holding that the Prison Rape Elimination Act does not create a private right of action to sue under 42 U.S.C. § 1983).

[12] Even relying on the comment that defendant "has seen bigger," is not enough evidence for a jury to rely on to transform the hernia examination into a sexual assault. Plaintiff himself acknowledges that this statement by defendant may not have even referred to his penis.

13

1   Plaintiff does not establish that defendant's touching went beyond the scope of the exam or that it
2   was done for defendant's sexual gratification. See Bearchild, 947 F.3d at 1145 (emphasizing that
3   when the disputed conduct began as a procedure that served a legitimate penological purpose,
4   "the prisoner must show that the guard's conduct exceeded the scope of what was required to
5   satisfy whatever institutional concern justified the initiation of the procedure"); see also Brewster
6   v. Mills, 2022 WL 976973, at *4 (N.D. Cal. Mar. 31, 2022) (finding that a defendant who
7   "swiped" plaintiff's buttocks "a little bit" in the process of tightening handcuffs on plaintiff after a
8   shower did not amount to a sexual assault under the Bearchild standard because of the
9   penological purpose of affixing handcuffs and because plaintiff failed to demonstrate how
10  defendant had exceeded the scope of that purpose). Although plaintiff indicates that he felt
11  humiliated and degraded as a result, the relevant Eighth Amendment inquiry is whether
12  defendant's touching was done for the purpose of humiliating or degrading plaintiff. Bearchild,
13  947 F.3d at 1144. Therefore, plaintiff's focus on his emotional injury, which the court does not
14  discount, does not establish that defendant subjectively intended this result. See Washington v.
15  Hively, 695 F.3d 641, 643 (7th Cir. 2012) (explaining that "[a]n unwanted touching of a person's
16  private parts, *intended to humiliate the victim* or gratify the assailant's sexual desires, can violate
17  a prisoner's constitutional rights.") (emphasis added). Based on this record, there is no genuine
18  issue in dispute concerning plaintiff's Eighth Amendment sexual assault claim. Thus, the
19  undersigned finds that a jury could not reasonably find that defendant Dr. Uddin touched plaintiff
20  in a sexual manner. As a result, defendant is entitled to summary judgment.[13]

**VII.    Plain Language Summary for Party Proceeding Without a Lawyer**

Because you are representing yourself in this case, the court wants to make sure that you understand this order. The following information is meant to explain this order in plain English and is not intended as legal advice.

The undersigned magistrate judge has concluded that the facts of this case are not sufficiently in dispute to warrant a trial and can be resolved on the papers. This means that your

---

[13] In the interests of judicial economy, the undersigned declines to address the remaining arguments in support of defendant's summary judgment motion.

case is ending without a trial.

If you disagree with this recommended outcome, you have 21 days to explain why it is not correct. Label your explanation as "Objections to Magistrate Judge's Findings and Recommendations." The district judge assigned to your case will review the file and make the final decision.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to file a sur-reply (ECF NO. 44-1) is granted for good cause shown.

2. Defendant's motion to strike plaintiff's sur-reply (ECF No. 45) is denied.

3. Plaintiff's motion to strike the Declaration of D. Anderson contained in his opposition docketed on December 7, 2023 (ECF No. 38) is denied because the court has not relied upon the declaration to reach its recommendation on the pending motion for summary judgment.

4. The Clerk of Court randomly assign this matter to a district court judge.

IT IS FURTHER RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 31) be granted; and,

2. The Clerk of Court be directed to enter judgment accordingly and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 18, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE